**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 14, 2007[*]
Decided December 14, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-1011

| | |
|---|---|
| RAMON ADONO, et al., *Plaintiffs-Appellants,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 01 C 8537 |
| WELLHAUSEN LANDSCAPE COMPANY, INC., et al., *Defendants-Appellees.* | William J. Hibbler, *Judge.* |

**O R D E R**

Ramon Adono, Benjamin Caro, and Heriberto Aguilar (collectively Former Employees) sued their former employer Wellhausen Landscape Company, Inc. (the Company), its president James Wellhausen (Wellhausen), and its profit sharing plan (the Plan), under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), (c), asserting that they were entitled to benefits under the Plan and

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

that Wellhausen breached his fiduciary duties as the Plan's trustee and administrator. After a bench trial the district court agreed with the Former Employees, awarded them their share under the Plan, and ordered Wellhausen to pay them a penalty. Unsatisfied with the award, the Former Employees appeal, arguing that the court should have awarded them more. We affirm.

In 1989 Wellhausen discovered that his stepfather, who was the Company's bookkeeper, embezzled about $60,000 from the Company. Wellhausen recovered the funds, which he used to establish the Plan, and in August 1991, the Plan became qualified for preferential tax treatment. *See* 26 U.S.C. § 401(a). Under the Plan, the Company's contributions are allocated to each participant based on the participant's yearly compensation. Vested participants (those with 5 years' service) are entitled to the full amount in their accounts one year after their employment with the Company ends. The total amount the Company ever contributed to the Plan was $60,100.

At trial the Former Employees testified that in 1991 or 1992 Wellhausen told them about the Plan and gave them Certificates of Participation. They received no further information about the Plan. They each left the Company after various disputes with Wellhausen—Aguilar and Caro left in 1997 and Adono left in 2000. Adono testified that, in November 2000, he sent a letter to Wellhausen requesting information about the Plan but that he never received a response.

Wellhausen testified that he decided to establish the Plan because his accountants advised him that he could use the Plan to defer paying taxes on the income embezzled by his stepfather. Wellhausen made two $30,000 deposits into the Plan's account (on top of an initial $100 deposit to open the account) and invested the assets in mutual funds. He acknowledged that he failed to provide employees with yearly reports about the value of their interests and that he failed to get a surety bond, as he was required to do as the trustee. He also admitted that he once withdrew $30,000 from the Plan and deposited it into the Company's account. He explained that he was considering a particular investment for the Plan, but changed his mind and a month later transferred $30,500 back to the Plan. He confirmed that he did not provide information about the Plan to the Former Employees when they left the Company, but denied receiving Adono's letter requesting information.

After this lawsuit was filed, the Company in 2002 hired E.R.I.S.A., Inc. to recreate for each Plan year the list of the Plan's participants, the valuation of the Plan's assets, the allocation of the Company's contributions, the forfeitures, and the Plan's investment gains and losses. The district court approved this appointment in 2003 and later ordered E.R.I.S.A., Inc. to complete the valuation.

Two employees of E.R.I.S.A., Inc. testified at trial. They explained that they used the Plan documents, account statements, and Company records to determine

the value of each participant's account for each year.  They explained that the Plan's value changed yearly and that each participant was affected proportionally.  They acknowledged that the Company had kept some—although incomplete—records of the participants' interests in the Plan and explained that E.R.I.S.A., Inc.'s calculations differed from the Company's because the Company had not accounted for all eligible employees.  They also explained that, because the Company made its last contribution to the Plan in 1991, the Plan had partially terminated in 1994, which meant that all participants became fully vested.  They also testified that the Plan lost its IRS qualification by not timely filing amendments with the IRS.

The district court found that Wellhausen, as the Plan's trustee and administrator, violated his fiduciary duties in five ways.  First, he improperly withdrew $30,000 from the Plan's assets in violation of 29 U.S.C. §§ 1104, 1106.  Second, he violated 29 U.S.C. § 1112(a) because he did not acquire a surety bond.  Third, he did not tell discharged employees about the value of their interests in the Plan.  Fourth, he failed to give each Plan participant a yearly statement of the Plan's assets.  Finally, in November 2000, he failed to respond to Adono's request for information about the Plan in violation of 29 U.S.C. § 1132(c)(1)(B).  The court concluded that Wellhausen acted in bad faith and ordered him to pay the Former Employees a $10 penalty for each day that he did not respond to Adono's inquiry.

The court next concluded that the Plan should be terminated and determined how much the Plan owed the Former Employees.  It adopted E.R.I.S.A., Inc.'s calculations because they were more reliable than the Company's previous calculations.  It then awarded $30,408.21 to Adono (the $18,200.21 in his Plan account in 2001 plus $12,208 in penalties), $16,105.14 to Aguilar (the $13,489.19 in his Plan account in 1998 plus $2,616 in penalties), and $8,456.13 to Caro (the $5,840.13 in his Plan account in 1998 plus $2,616 in penalties).

The Former Employees then moved for a new trial and for the district court to amend its judgment.  *See* FED. R. CIV. P. 59(a)(2), (e).  They disputed the district court's conclusions that E.R.I.S.A., Inc.'s valuation was reliable and urged the court to use the valuation that the Company performed, which they maintained would have allotted them a greater share of the Plan.  They also argued that, in light of the many ways that Wellhausen breached his fiduciary duty, the court should have imposed a stiffer penalty.  The court denied the motion and explained that there was no evidence that E.R.I.S.A., Inc.'s results were unreliable.  It also pointed out that the court itself ordered E.R.I.S.A., Inc. to complete the audit.  The court further determined that no greater penalty against Wellhausen was warranted because his errors were the result of poor accounting practices, not malfeasance.

As a threshold matter, the appellees argue that we do not have jurisdiction because the Former Employees filed their notice of appeal too late.  They are wrong;

this appeal is timely. Although the order denying the Former Employees' Rule 59 motion was signed on November 30, 2005, the order was entered on the district court's docket on December 2. To determine whether an appeal is timely, we look to the date the order was entered on the docket, not the date it was signed. *See Darne v. State of Wis.*, 137 F.3d 484, 486 n.1 (7th Cir. 1998). So the Former Employees had 30 days from December 2 to file their notice of appeal. FED. R. APP. P. 4(a)(1)(A). But that day—January 2—was a federal holiday, so the Former Employees had an extra day to file. FED. R. APP. P. 26(a)(3), (4). The Former Employees timely filed their notice of appeal on January 3, so we have jurisdiction.

Turning to the merits, the Former Employees dispute the valuation the district court used to determine their share of the Plan. They argue that the court should not have adopted E.R.I.S.A., Inc.'s calculation and instead should have used the Company's valuation, which would have entitled them to more. This argument takes issue with the district court's findings of fact and application of the facts to the law, and we review these determinations for clear error, which we will not find unless we are "left with a definite and firm conviction that a mistake has been committed." *Cohen Dev. Co. v. JMJ Props., Inc.*, 317 F.3d 729, 735 (7th Cir. 2003) (citation and internal quotation marks omitted).

The Former Employees do not challenge E.R.I.S.A., Inc.'s methodology or dispute the accuracy of its calculations. Instead, they advance the tortured and bizarre argument that Wellhausen had no authority as trustee and administrator to hire E.R.I.S.A., Inc. because the Plan was void at its inception. As evidence that the Plan was never valid, they claim that Wellhausen established the Plan solely for improper purposes. We are puzzled why the Former Employees press this argument because if they are correct that the Plan was invalid from the beginning, they would be entitled to recover nothing because there would be no Plan to provide them with benefits. Furthermore, if there were no plan under ERISA, we would not have subject matter jurisdiction to hear their claims. *See Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1373 (7th Cir. 1997).

In any event, the district court did not err when it determined that the Plan was a valid, qualified employee benefits plan when Wellhausen established it. The Plan meets ERISA's definition of an "employee pension benefit plan" because, by its express terms, it provides deferred, retirement income to employees, 29 U.S.C. § 1002(2)(A), and accordingly, it is covered by ERISA, 29 U.S.C. § 1003(a); *see also In re Baker*, 114 F.3d 636, 638-39 (7th Cir. 1997); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir. 1994). Furthermore, the written Plan document meets all of ERISA's statutory requirements. *See* 29 U.S.C. § 1102(b). The IRS also agreed that the Plan was valid because it qualified the Plan for preferential tax treatment. *See* 26 U.S.C. § 401(a). And the Former Employees cite no case law supporting their

contention that an employer's motivation has any bearing on whether an employee pension benefit plan is valid.

In another effort to try to establish that Wellhausen lacked authority to hire E.R.I.S.A., Inc., the Former Employees maintain that, even if the Plan was not void from its inception, it terminated sometime before July 31, 1994. But there is no evidence that the Plan fully terminated at any point. (The Plan *partially* terminated in 1994, but the only effect was to fully vest all participants.) A Plan completely terminates only after it meets ERISA's strict requirements. *See* 29 U.S.C. § 1341; *United States v. Hook*, 195 F.3d 299, 307 (7th Cir. 1999); *see also Am. Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574, 579 (3d Cir. 1995). The Former Employees do not even attempt to argue that those requirements for termination were satisfied. Accordingly, the district court was not compelled to find that the Plan terminated before July 31, 1994.

The Former Employees next argue that Wellhausen unlawfully amended the Plan when he hired E.R.I.S.A., Inc. to revalue the Plan. But they are wrong again because the Plan was not amended. The Plan gives the administrator the authority to "correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan." When Wellhausen hired E.R.I.S.A., Inc. he merely applied a provision already in the Plan. *See Brengettsy v. LTV Steel (Republic) Hourly Pension Plan*, 241 F.3d 609, 612 (7th Cir. 2001); *Dooley v. Am. Airlines, Inc.*, 797 F.2d 1447, 1451-52 (7th Cir. 1986). Moreover, the district court approved E.R.I.S.A., Inc.'s appointment and ordered it to complete the valuation. To be sure, E.R.I.S.A., Inc. came up with values different from the values the Company had earlier calculated, but there was no evidence that E.R.I.S.A., Inc. did anything improper.

The Former Employees also argue that the district court erred by failing to impose the statutory maximum penalty of $100 per day on Wellhausen given the extent of his breach of fiduciary duty. It is not mandatory for the district court to impose a penalty for failing to provide Plan information, and we review any penalty the court does impose for abuse of discretion. *See Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir. 2002). Although the district court could have imposed a higher penalty than $10 per day, 29 U.S.C. § 1132(c)(1), the Former Employees have not convinced us that the district court abused its discretion. The court explained that Wellhausen's breach of fiduciary duty was the result of poor accounting practices, not malfeasance, so a larger penalty was not warranted, and we will not disturb this valid reason.

For their part, the appellees argue in their brief that the Former Employees did not timely file their petition for attorneys' fees in the district court. But this issue was not raised by the Former Employees on appeal, and the appellees filed no

cross-appeal, so we lack jurisdiction to decide this issue. *See JPMorgan Chase & Co. v. Comm'r of Internal Revenue*, 458 F.3d 564, 570 n.3 (7th Cir. 2006). Furthermore, the record does not show that the district court entered a final order addressing the timeliness of the petition, so we cannot address it. 28 U.S.C. § 1291.

Finally, Wellhausen filed a motion asking us to impose sanctions under Federal Rule of Civil Procedure 11 on the Former Employees' attorney. Wellhausen argues that the attorney could have settled this dispute without resorting to litigation and somehow misled the court by failing to inform it of this alternative dispute resolution procedure. But we do not have the authority to impose sanctions under Rule 11; only the district court may do so. *See DDI Seamless Cylinder Int'l Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1165 (7th Cir. 1994). And, even if there were another vehicle for resolving this dispute, there was nothing improper in turning to the courts instead.

AFFIRMED.