

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Romero v. SmithKline Beecham

Precedential or Non-Precedential: Precedential

Docket No. 01-3273

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Romero v. SmithKline Beecham" (2002). *2002 Decisions.* Paper 680.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/680

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed October 30, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3273

LOUISE C. ROMERO

Appellant

v.

SMITHKLINE BEECHAM,
a Delaware Corporation;
SMITHKLINE BEECHAM PENSION PLAN;
VINCENT C. BRUETT;
STANLEY J. SEROCCA, JR.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

District Court Judge: Honorable Dickinson R. Debevoise
(D.C. No. 99-1308)

Argued: September 12, 2002

Before: ALITO and FUENTES, Circuit Judges,
and OBERDORFER,* District Judge

(Opinion Filed: October 30, 2002)

_____

* The Honorable Louis F. Oberdorfer, Senior District Judge for the
District of Columbia, sitting by designation.


        (ROBERT H. JAFFE (Argued)
        Robert H. Jaffe & Associates, P.A.
        8 Mountain Avenue
        Springfield, NJ 07081

        Counsel for Appellant

        JACQUELINE V. GUYNN
        BRIAN T. ORTELERE (Argued)
        JEFFREY K. TECHENTIN
        Pepper Hamilton, L.L.P.
        3000 Two Logan Square
        Eighteenth & Arch Streets
        Philadelphia, PA 19103-2799

        Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Plaintiff Louise Romero brought this action under ERISA sections 502(a)(1)(B), 502(c)(1), and 510, 29 U.S.C. SS 1132(a)(1)(B), 1132(c)(1), and 1140, claiming that she was wrongfully denied ERISA benefits, was terminated for the purpose of interfering with her attainment of ERISA rights, and was entitled to a civil penalty because the administrator of her employer's plan did not provide requested plan documents within the time specified by statute. The District Court granted summary judgment in favor of the defendants, holding that (1) defendant SmithKline Beecham did not abuse its discretion when it declared Romero ineligible for enhanced retirement benefits, (2) SmithKline did not terminate Romero in order to sabotage her benefits package, and (3) Romero was not entitled to a civil penalty from defendant Serocca, SmithKline's ERISA plan administrator. We affirm the judgment of the District Court with respect to the first two issues, but we hold that the District Court misconstrued ERISA section 502(c)(1), which governs the civil-penalty issue, and we therefore reverse and remand for further proceedings regarding that issue.

2

I.

Romero began working for SmithKline in 1973. In 1995, the company announced a "Voluntary Reduction in Force" (VRIF) plan promising enhanced severance packages to employees retiring early. Romero agreed to a package conditioned on satisfactory completion of her work assignments and a departure date during the fourth quarter of 1997. She intended to retire on December 31, 1997, but SmithKline scheduled her last day as October 3, 1997. Since October falls during the fourth quarter of the calendar year, this date preserved Romero's eligibility for all the benefits that she would have received by leaving in December, but she evidently did not understand this and became deeply angered.

Romero made several remarks that some employees construed as threats against Human Resources Director Vincent Bruett, who had helped Romero arrange her resignation. She canceled her plate at a company dinner that Bruett planned to attend, explaining to Human Resources employee Betzaida Boynton:

> My spouse doesn't want to have to see that man's face after everything he has done to me. . . . I can't say how he might react when he sees that man. . . . I hope someday somebody puts a bullet in that man. . . . I won't do it because I [am] not going to jail for that man, but I would love to see the day when someone does get him.

When Boynton questioned whether Romero really meant what she had said, Romero replied, "Yes, I do." Romero then left Boynton a voice-mail message stating:

> I want to correct things, if anything happened to that
> mean, soulless man that you work for, if somebody get
> [sic] him, I don't want anyone to think that it is me,
> but I sure would shed no tear and I will be happy, so
> it ain't going to be me if anything does happen. If
> happen [sic], I don't know, but anyhow, my hands are
> clean. My mind isn't, but my hands are.

Boynton was noticeably unsettled and shaken by the incidents.

Boynton reported the matter to SmithKline's security department, which contacted the police. The company summoned Romero to a disciplinary proceeding, but she refused to speak without counsel. SmithKline then suspended her and converted the suspension to a termination a week later, on April 29, 1997, citing a company policy prohibiting "[d]eliberate or reckless action that causes either actual or potential loss to the company or employees, damages to company or employee property, or physical injury to employees." Because Romero did not remain in SmithKline's employment in the fourth quarter of the year or satisfactorily complete her work, the termination disqualified her from receiving the enhanced severance package.

Romero, both personally and through her attorney, attempted to negotiate for the enhanced benefits with SmithKline's retiree benefits coordinators. On January 2, 1999, she wrote to Kim Nelson, a Retiree Benefits Representative at SmithKline, requesting copies of the company's amended pension plan and employee handbooks. Two weeks later, Romero's attorney wrote to another benefits representative, Gwen Ubil, to discuss reinstatement of benefits. SmithKline did not respond to the letters until shortly after Romero commenced litigation in March 1999, when plan administrator Stanley Serocca provided a copy of the plan description and reiterated SmithKline's justifications for denying her claim.

Romero commenced this action in District Court, but since she had never filed an administrative appeal, her action was stayed pending exhaustion of administrative remedies. On November 29, 1999, Serocca denied Romero's appeal, citing her termination prior to 1997's fourth quarter and her consequent failure satisfactorily to complete her work. Responding to Romero's efforts to contest the propriety of her termination, Serocca later explained: "Death threats in the workplace constitute a more than sufficient basis for firing." When Romero resumed the litigation in District Court, she asked for de novo review of SmithKline's decision or review under a modified arbitrary-and-capricious standard. She also asked the court to impose personal liability on Serocca for his tardiness in

supplying the plan materials. The District Court granted summary judgment for all defendants on all claims. This appeal followed.

II.

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F ED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Appellate review of a grant of summary judgment is plenary. City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 159 (3d Cir. 1997).

Decisions of ERISA fiduciaries generally merit deference from courts. De novo review of a denial of benefits is appropriate only when a plan administrator has no "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Romero argues that Serocca had no "real discretion" to review her case because he believed that he could not overturn SmithKline's decision to terminate her.1  Since Romero plainly could not satisfy the conditions precedent to enhanced benefits under the VRIF after being fired, Serocca was, she submits, "fatally inhibited from exercising discretion." We disagree and decline to hold that an ERISA fiduciary exercises no "discretionary authority to determine eligibility for benefits" simply because a particular case's facts are so unfavorable to a claimant that a denial seems virtually obligatory. A contrary rule would yield the absurd result of reserving the least deferential standard of review for the least meritorious appeals.

Romero asks alternatively for review under an arbitrary-and-capricious standard that retains the deference

---

1. Romero challenges this belief as mistaken and maintains she was entitled to contest her termination during ERISA review. That is obviously incorrect. "It defies common sense to suggest that a corporation must allow a retirement board to make personnel decisions such as determining which plants need fewer employees." Trenton v. Scott Paper Co., 832 F.2d 806, 809 (3d Cir. 1987).

accorded to administrative decisions but appraises a fiduciary's "conflict of interest" as a "factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (citation omitted); see also Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 382-86 (3d Cir. 2000) (recounting efforts by the Courts of Appeals to resolve ambiguity in Firestone's conflict-of-interest standard). Romero argues that a conflict of interest tainted Serocca's review because she sought $50,000 in benefits from her employer and because Serocca supervised Bruett. The

District Court found neither argument convincing because Romero "failed to adduce evidence that a potential payout of approximately $50,000 in benefits by SmithKline, a company with $12.5 billion in revenues in 1999, created a conflict" and because the District Court saw "no support in the record for Romero's contention that Serocca was conflicted by the fact that he was Bruett's supervisor." The District Court properly applied the reasoning of our decisions in Pinto, 214 F.3d at 388, and Kotrosits v. GATX Non-Contributory Pension Plan for Salaried Employees , 970 F.2d 1165, 1173-74 (3d Cir. 1992), in holding that the potential payout to Romero under the benefits plan was insufficient to establish a conflict of interest. We also agree that Serocca's supervision of Bruett establishes no such conflict.

Reviewing Serocca's decision under the arbitrary and capricious standard, the District Court found it within reason and supported by substantial evidence. We agree.2 Moreover, because Romero does not dispute that " 'there is sufficient evidence for a reasonable person to agree with the [administrator's] decision,' " Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (citation omitted), the District Court plainly had no basis for overturning Serocca's decision as an abuse of discretion. Summary judgment in favor of SmithKline on Romero's section 502(a)(1)(B) claim was therefore proper.

The District Court also held that Romero did not state a claim under section 510 of ERISA, 29 U.S.C. S 1140, which

_____

2. Indeed, we would sustain the decision even under a less deferential standard.

prohibits terminations "for the purpose of interfering with the attainment of any right to which [a] participant may become entitled under the plan . . . ." 29 U.S.C.S 1140 (2002). In order to state a section 510 claim a plaintiff must allege: "1. prohibited employer conduct; 2. taken for the purpose of interfering; 3. with the attainment of any right to which the employee may become entitled." Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997). Here, Romero alleges a "conspiracy" to deny her benefits, but she does not identify any facts in the record that would establish either prohibited conduct or the requisite "specific intent" to interfere with benefits. Id. A party opposing a motion for summary judgment must "go beyond the pleadings" and demonstrate that a reasonable factfinder could return a favorable verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Romero's vague allegations of malicious termination, unsupported by any facts, are insufficient.

Finally, the District Court declined to impose personal liability on Serocca for delays in responding to Romero's information requests. Under ERISA section 502(c)(1),

> [a]ny administrator . . . who fails or refuses to comply
> with a request for any information which such
> administrator is required by this title to furnish to a
> participant . . . may in the court's discretion be
> personally liable to such participant or beneficiary in
> the amount of up to $100 a day from the date of such
> failure or refusal, and the court may in its discretion
> order such other relief as it deems proper.

29 U.S.C. S 1132(c)(1) (2002). Citing authority cautioning
that section 502(c)(1) must be strictly construed, see
Haberern v. Kaupp Vascular Surgeons Ltd., 24 F.3d 1491,
1505 (3d Cir. 1994), the District Court held that because
Romero addressed her requests for information to Nelson
and Ubil, not Serocca, she could not recover the civil
penalty.

We believe that the District Court's reading of section
502(c)(1), 29 U.S.C. S 1132(c)(1), is not compelled by the
statutory language and is unduly narrow. Although section
502(c)(1) specifies the address to which a response to a

request must be sent -- "the last known address of the
requesting participant or beneficiary" -- it nowhere states
that a request for covered information must be served upon
or even mailed personally to the plan administrator.
Moreover, such a requirement would in some
circumstances unreasonably frustrate the evident purposes
of the provision. For example, if the plan administrator is
changed and a request for information is addressed to the
previous administrator but actually reaches the current
administrator, we see no reason why section 502(c)(1)
should not apply. In addition, there may be other
circumstances in which it is not easy for a participant or
beneficiary to obtain the name of the administrator. We
have no doubt that section 502(c)(1) was not meant to
impose upon a plan participant or beneficiary seeking
information the inflexible requirement of addressing the
request to the current plan administrator.

At the same time, however, we agree with the District
Court's general view that section 502(c)(1) must not be read
too loosely. First, we believe that section 502(c)(1) requires
actual receipt by the administrator. This interpretation is
supported by the statute's reference to an administrator
"who . . . fails or refuses to comply with a request for . . .
information." It is not customary to refer to a person's
failure or refusal to comply with a request that has never
been received. Furthermore, it is unlikely that Congress
wanted to impose a civil penalty on a person who has not
engaged in any wrongful conduct.

Second, because section 502(c)(1) requires a response
within a rather short time (30 days) "after [the] request,"
the statute appears to contemplate that the request will be
delivered in a manner that permits the administrator or the

appropriate subordinates to work on the matter soon after the request is made. Accordingly, we believe that the 30-day period should not begin to run until the request is actually received either by the administrator or those under the administrator's supervision. This requirement, we conclude, provides adequate protection for an administrator in a situation in which a request for information is not delivered or sent directly to the administrator.

8

Because the District Court in the present case did not correctly interpret section 502(c)(1), we remand this case for further proceedings relating to Romero's civil-penalty claim. We note that if an administrator does not comply with a request within the specified time, the District Court must make a discretionary decision as to whether a civil penalty should be assessed and as to the amount of any such penalty. Section 502(c)(1), as noted, provides that a penalty may be imposed "in the court's discretion" and that any such penalty may be in any amount "up to $100 a day."

Appropriate factors to be considered in making these decisions include "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001) (citation omitted). Other circuits have studied the role of prejudice or damages in the inquiry and have concluded that although they are often factors, neither is a sine qua non to a valid claim under section 502(c)(1). See Bannistor v. Ullman, 287 F.3d 394, 407 (5th Cir. 2002); Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 204 n.11 (2d Cir. 2001); Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 (4th Cir. 1996); Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir. 1994); Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993).

III.

We affirm the District Court's grant of summary judgment to the defendants on Romero's claims under sections 502(a)(1)(B) and 510 of ERISA. We reverse the District Court's grant of summary judgment to defendant Serocca on Romero's section 502(c)(1) claim and remand for further proceedings related to that claim.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9