**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2414
_____

SARAH FAMA,

Appellant

v.

DESIGN ASSISTANCE CORPORATION;
PLAN ADMINISTRATOR FOR THE DESIGN ASSISTANCE
CORPORATION AMERIHEALTH GROUP MEDICAL PLAN;
DESIGN ASSISTANCE CORPORATION AMERIHEALTH GROUP MEDICAL
PLAN;
INDIVIDUALS ABC 1-10, all fictitious names and/or entities who should be identified
through discovery
_____

No. 12-2474
_____

SARAH FAMA

v.

DESIGN ASSISTANCE CORPORATION;
PLAN ADMINISTRATOR FOR THE DESIGN ASSISTANCE CORPORATION
AMERIHEALTH GROUP MEDICAL PLAN;
DESIGN ASSISTANCE CORPORATION AMERIHEALTH GROUP MEDICAL
PLAN,

Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 1:10-cv-02057)
District Judge:  Hon. Noel L. Hillman

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 19, 2013

Before:  FUENTES, CHAGARES, and BARRY, <u>Circuit Judges</u>.

(Filed: April 10, 2013)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Sarah Fama appeals the order of the District Court for the District of New Jersey, granting in part and denying in part Fama's motion for summary judgment.  The District Court granted Fama's request for the imposition of a penalty on her former employer for failing to notify Fama of her rights under the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA") in a timely manner.  However, Fama challenges the District Court's decision to impose a penalty of only $10 per day.  She also claims that the District Court erred in denying summary judgment on her claim for reimbursement of actual medical expenses, and in denying her request for the award of attorneys' fees.  Fama's former employer, Design Assistance Corporation ("DAC"), filed a cross-appeal, challenging the District Court's denial of its own motion for summary judgment on the statutory-penalty claim.  DAC argues that the District Court incorrectly determined the date on which Fama should have been notified of her COBRA rights, and that, consequently, Fama should not have been awarded statutory penalties, or,

2

alternatively, that the awarded penalties should have been calculated for a shorter period of time. For the reasons that follow, we will affirm.

I.

Because we write solely for the benefit of the parties, we recite only the facts essential to our disposition. Fama began to work for DAC in April 2008 as an administrative and personnel assistant. As a regular, full-time employee, she was entitled to group health insurance benefits under DAC's health insurance policy — Amerihealth Group Medical Plan (the "Plan"). On or about August 1, 2008, Fama enrolled in the Plan and became a beneficiary and participant in the Plan. Fama's resignation from employment with DAC became effective on September 30, 2008.

The COBRA amendments to the Employee Retirement Income Security Act of 1974 ("ERISA") provide employees with the option of continuing the insurance coverage they had under their employer's policy in circumstances where they would lose coverage as a result of a "qualifying event." 29 U.S.C. § 1161. One such "qualifying event" is "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." § 1163. The period during which the employee is eligible to choose to continue his or her coverage — the "election period" — begins no later than the date when the coverage terminates as a result of a qualifying event, and lasts for at least sixty days. § 1165(a)(1). The continuing coverage must be "identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." § 1162(1). Moreover, the maximum required period that continuing coverage must be

3

offered after the qualifying event of termination of employment is eighteen months. § 1162(2)(A).

COBRA requires that the employer inform the health care plan's administrator of a covered employee's termination of employment within thirty days, § 1166(a)(2), and, Fama argues, it gives the administrator fourteen days to notify the employee of the right to continued coverage. See 29 C.F.R. § 2590.606-4 ("In the case of a plan with respect to which an employer of a covered employee is also the administrator of the plan . . . the administrator shall furnish to each qualified beneficiary a notice meeting the requirements of paragraph (b)(4) of this section not later than 44 days after . . . the date on which the qualifying event occurred.").

The District Court found that Fama was not notified of her right to COBRA continuation coverage within 44 days after the termination of her employment, in violation of ERISA. In May 2009, Fama's former counsel wrote to DAC, informing the company that it had not sent the required COBRA notice to Fama. Disputing the circumstances under which Fama's tenure at DAC ended, DAC's representative responded that Fama was not entitled to such notice. DAC's representative also noted that, after Fama ceased to work at DAC, the company mistakenly continued Fama's coverage under the Plan for several months. Only in March 2009 did DAC realize its mistake, and it then cancelled Fama's coverage retroactively, effective January 1, 2009. But in June 2009, for reasons not entirely clear, DAC retroactively reinstated Fama's benefits effective January 1, 2009 to eliminate any gap in Fama's coverage. Finally, on September 3, 2009, almost a year after her resignation, Fama received notice of her

4

eligibility for COBRA continuation coverage. The District Court found that, in the time between her resignation (September 30, 2008) and September 3, 2009, Fama paid for medical expenses that otherwise would have been covered by the plan.

The District Court concluded that DAC's failure to notify Fama of her right to continuation coverage violated ERISA's notification requirement and therefore subjected DAC to a statutory penalty. The District Court valued that penalty at $10 per day for each of the 293 days between the date when it found DAC should have given Fama her COBRA notice (that is, 44 days after the "qualifying event" of Fama's resignation on September 30, 2008), and the date when notice was finally given (September 3, 2009). According to the relevant regulations, Fama was eligible to receive a statutory penalty from DAC of up to $110 for each day that the notice of her eligibility for COBRA coverage was late. See 29 U.S.C. § 1132(c)(1) (indicating that maximum penalty is $100 per day); see also 29 C.F.R. § 2575.502c-1 (increasing amount of maximum penalty from $100 to $110 per day for violations occurring after July 29, 1997). Fama appeals the District Court's decision to award only $10 per day, and also seeks attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1).

In its cross-appeal, DAC argues that the District Court erred in identifying the date of the "qualifying event" that triggered the imposition of the statutory penalty because the date adopted by the District Court (44 days after September 30, 2008) does not take into account the fact that DAC mistakenly continued Fama's coverage under the Plan well after the termination of Fama's employment.

II.

5

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, since this case arises under federal law (specifically, 29 U.S.C. § 1161). We have jurisdiction over the appeal under 28 U.S.C. § 1291.

We review de novo the District Court's order granting in part DAC's summary judgment motion, and granting in part Fama's cross-motion for summary judgment. Stratechuk v. Bd. of Educ., South Orange-Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir. 2009). In conducting our review, we "apply[] the same standard as the District Court," and, "[o]n cross-motions for summary judgment, [we] construe[] facts and draw[] inferences in favor of the party against whom the motion under consideration is made." Pichler v. UNITE, 542 F.3d 380, 385-86 (3d Cir. 2008) (quotation marks omitted). However, it is "in the court's discretion" to determine the amount of penalty to be imposed for an employer's failure to notify an employee of his or her eligibility for health care continuation coverage, so we review the amount of the penalty imposed by the District Court for abuse of discretion. 29 U.S.C. § 1132(c)(1). We also review the failure to award attorneys' fees for abuse of discretion. 29 U.S.C. § 1132(g)(1). We review de novo, however, the legal standards the District Court employed to guide the exercise of its discretion. See McPherson v. Emps.' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256 (3d Cir. 1994).

Fama claims "it is undisputed that DAC did not provide Fama with the requisite COBRA notice until almost a year after the termination of her employment," so that "the imposition of statutory penalties are [sic] necessary and appropriate." Fama Br. 10. DAC argues in its cross-appeal that the District Court identified the wrong date

6

(September 30, 2008) as the "qualifying event," because § 1163 defines such an event as an occurrence that, "but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163. As DAC points out, Fama "received the same health and prescription coverage she had as an employee at no cost to her." DAC Br. 10. Therefore, DAC argues, Fama was "in a better position with respect to the health insurance benefits" than she would have been with COBRA coverage, id., and her leaving DAC on September 30, 2008 could not be a qualifying event because it did not "result in the loss of coverage."

We hold that the relevant provisions of the Code of Federal Regulations support the District Court's finding that Fama's resignation on September 30, 2008 constitutes a qualifying event, even though Fama's coverage under DAC's health benefits plan was erroneously allowed to continue. To begin with, the regulations explain that "[t]he end of the maximum [COBRA] coverage period is measured from the date of the qualifying event even if the qualifying event does not result in a loss of coverage under the plan until a later date." 26 C.F.R. § 54.4980B-7(e)(A-4)(b)(1) (emphasis added). Thus the fact that Fama's coverage continued after her resignation does not mean that her resignation does not constitute a qualifying event.

One example in the C.F.R., furthermore, imagines an employee whose employment is terminated "and, beginning with the day after the last day of employment, is given 3 months of employer-paid coverage under the same terms and conditions as before that date." 26 C.F.R. § 54.4980B-4(g). In this example, where the coverage terminates three months after the employee's termination, it is still the case that "[t]he

7

loss of coverage . . . results from the termination of employment and, thus, the termination of employment is a qualifying event." Id. Accordingly the District Court reasoned that "the statute, the regulations, and the preceding example compel the conclusion that, in order to constitute a qualifying event, coverage must be lost either at the time of the qualifying event, or at some point within the eighteen-month maximum coverage period." Appendix ("App.") 7; see also 29 U.S.C. § 1162(2)(A) (indicating that the maximum term in which continuing coverage must be offered is eighteen months). We agree, and therefore hold that DAC failed to give Fama the proper COBRA notice under 29 U.S.C. § 1166.

We also conclude that the District Court properly imposed a penalty on DAC, pursuant to 29 U.S.C. § 1132(c)(1)(A). This Court has held that "[a]ppropriate factors to be considered" in determining whether penalties are to be imposed under ERISA's § 502(c)(1), 29 U.S.C. § 1132(c), "include bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3d Cir. 2002) (quotation marks omitted). The Romero Court also noted that, although "prejudice or damages . . . are often factors, neither is a sine qua non to a valid claim under section 502(c)(1)." Id.

The District Court did not abuse its discretion when it did "not find that Defendants acted in bad faith or with malicious intent." App. 30. The fact that Fama's coverage under the Plan continued even after her employment terminated strongly suggests that, as DAC's president indicated, Fama's benefits (and eligibility for COBRA

8

coverage) were confused due to an administrative error. Therefore, although Fama argues that the attempt to cancel her coverage on October 15, 2008 demonstrates DAC's bad faith because Fama received no notice of that cancellation, it was not error for the District Court to decide otherwise, since the administrative disorganization leading to the continuation of Fama's benefits may have affected the notice process as well.

The District Court likewise did not abuse its discretion in determining that the other factors to be analyzed in considering a § 1132(c) penalty weighed in Fama's favor. Fama should have received the COBRA notice within forty-four days after September 30, 2008, but did not receive it until September 3, 2009, despite requesting it from DAC in March 2009. Moreover, as Fama points out, she paid $656.22 in medical expenses from September 30, 2008 through September 3, 2009. Although DAC argues that Fama was covered under the Plan for months after her resignation, the fact remains that Fama was unaware of this, and was therefore compelled to cover her medical expenses herself. Moreover, Fama applied for treatment as an "assistance eligible individual" pursuant to the American Recovery and Reinvestment Act of 2009. Finally, Fama may have tended to her medical needs differently than she would have done in the months following her resignation, had she not been under the mistaken assumption that she had no health care coverage.

We reject, moreover, Fama's argument that the District Court erred in failing to award statutory damages in an amount greater than $10 per day against DAC. Fama cites cases from district courts throughout the country to contend that, even when an administrator acts in good faith or there is no prejudice to the employee, "courts have

9

typically awarded a statutory penalty of between $45-$55/day." Fama Br. 11. However, the District Court carefully set forth the reasoning behind its decision to impose a relatively low penalty. In addition to finding an absence of bad faith, the District Court determined that "[t]he fact that Fama's insurance was reinstated retroactively and at no cost to her exhibits a certain degree of good faith by Defendants and their willingness to remedy their mistake." App. 30. We conclude that the District Court did not abuse its discretion in awarding $10 per day to Fama.

As to Fama's claim that the District Court erred in failing to award her $656.22, the amount of medical expense she incurred in the time between her resignation and her receipt of the COBRA notice, plus interest, we will affirm the District Court's decision. Although ERISA would seem to permit such reimbursement, see 29 U.S.C. § 1132(c)(1) ("[T]he court may in its discretion order such other relief as it deems proper."), Fama points to no statutory authority mandating such reimbursement. Furthermore, as the District Court noted, after DAC retroactively reinstated Fama's medical benefits to cover the time period when Fama incurred the medical expenses in question, Fama "could have, but failed to, resubmit to her insurer the $656.22 worth of unreimbursed medical expenses allegedly incurred during the lapsed period." App. 11. Accordingly, the District Court did not abuse its discretion in finding that Fama failed to mitigate her damages, and denying her reimbursement.

Fama finally argues that the District Court abused its discretion in denying Fama's request for attorneys' fees. To begin with, Fama acknowledges that this Court has not established a "presumption in favor of awarding attorneys' fees to a successful ERISA

10

plaintiff," but argues that "there should be" such a presumption. Fama Br. 15. The District Court employed the five-factor test elucidated in Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983), to determine whether attorneys' fees should be awarded. The five factors to be considered are:

> (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deter[r]ent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position.

Id. at 673. Fama contends that, because the Supreme Court held in Hardt v. Reliance Standard Life Insurance Company that analysis of the five factors is "not required for channeling a court's discretion when awarding fees under this section," the District Court erred in employing the Ursic test. 130 S.Ct. 2149, 2158 (2010). The Hardt decision, however, does not hold that it is error to employ the five-factor analysis — only that such analysis is "not required." Moreover, while Hardt relies upon a different case, Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983), which "lays down the proper markers to guide a court in exercising [its] discretion" to award attorneys' fees under ERISA, Hardt, 130 S.Ct. at 2158, even Ruckelshaus concludes only that "a fee claimant [must] attain some success on the merits before it may receive an award of fees," Ruckelshaus, 463 U.S. at 693. That is, Ruckelshaus does not hold, as Fama would like, that when a claimant attains some success on the merits, a district court is required to exercise its discretion to award attorneys' fees. We hold that the District Court did not abuse its discretion in determining that the lack of bad faith on DAC's part, the minimal deterrent

11

effect of shifting fees in this particular case, the minimal benefit that this litigation will have on members of the pension plan as a whole, and the relatively small harm suffered by Fama given that DAC retroactively reinstated her insurance coverage, weigh against the award of attorneys' fees to Fama.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.