# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 17-11147

———————

DAVID L. HAGER,

Plaintiff - Appellant

v.

DBG PARTNERS, INCORPORATED,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2018

Lyle W. Cayce
Clerk

———————————

Appeals from the United States District Court
for the Northern District of Texas

———————————

Before STEWART, Chief Judge, and WIENER and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

After Plaintiff-Appellant David Hager was fired by Defendant-Appellee DBG Partners, Inc ("DBG"), he obtained continuation coverage under DBG's ERISA health care plan through the Consolidated Omnibus Budget Recovery Act ("COBRA"). Hager later filed this suit, alleging that DBG had discontinued its health plan without notifying him, violating COBRA's notice requirements. The district court sua sponte dismissed Hager's claim on the eve of trial, concluding that ERISA did not provide Hager with a remedy. Hager appeals, and we reverse.

No. 17-11147

## I. FACTS AND PROCEEDINGS

Hager was DBG's Chief Financial Officer until August 15, 2014. By a letter hand-delivered to Hager's home address that day, DBG's Chief Executive Officer, Todd Rowan, notified Hager that he was fired. Various sections of COBRA allow a former employee to continue receiving health insurance through the former employer's ERISA health insurance plan.[1] Hager elected to continue his enrollment in DBG's health plan with Blue Cross Blue Shield through COBRA.

In May 2015, DBG decided to terminate its Blue Cross Blue Shield health plan. DBG has produced a letter addressed to Hager's former address—not the address where it sent Hager's termination letter—stating that it was terminating that coverage effective June 1, 2015. Hager contends he never received this letter. He continued paying his insurance premiums to DBG through August 2015, and DBG deposited his checks. From June to August 2015, Hager underwent colon cancer treatment. In August 2015, Hager learned that he had not been covered during those months.

In February 2016, Hager sued DBG, seeking reimbursement of his medical expenses for the period he was without coverage.[2] He alleged that DBG had committed statutory violations of COBRA by failing to notify him of (1) his right to COBRA coverage and (2) the termination of the insurance plan. Hager also alleged fraudulent conversion of his insurance premiums for the period after the health plan was cancelled. In May 2017, DBG refunded Hager's insurance premiums for June to August 2015.

On August 8, 2017, the district court held a pretrial conference, at which Hager, through counsel, acknowledged that he had received notice of his

---

[1] 29 U.S.C. 1161 *et seq.*; *see Geissal v. Moore Med. Corp.*, 524 U.S. 74, 79–80 (1998).

[2] Hager also alleged causes of action against Rowan, but the court dismissed Rowan from the suit in July 2017, which Hager does not appeal.

## No. 17-11147

eligibility for COBRA coverage. Hager therefore elected to proceed only on his claim that DBG had failed to notify him that the plan coverage was being terminated. At the pretrial conference, the district court expressed uncertainty that DBG had any obligation to notify Hager that coverage was being terminated. At the hearing, the court asked for citations to the statute or regulation that imposed such a notice requirement.

Two days later, Hager's counsel filed a status report on the parties' unsuccessful settlement discussions. He drew the court's attention to the provision of the Code of Federal Regulations that requires a plan administrator to give notice if COBRA coverage is terminated prematurely.[3]

On August 16, the parties again met for a settlement conference, which again proved unsuccessful. After the conference, the parties reported to the courtroom; the proceeding that followed is not in the record. The court apparently expressed its concern that, even if DBG did have a notice obligation, ERISA (of which the relevant sections of COBRA are a part[4]) did not allow monetary damages. The court specifically highlighted a case from the Ninth Circuit which suggested that remedy was unavailable.[5] The court nevertheless determined to proceed to trial the following week.

The parties appeared before the court several days later to dispose of the remaining pretrial matters. The district court reiterated its concern that Hager lacked a remedy and ordered the parties to reconvene in a few hours for Hager to present authority that supported the availability of his remedy. When they reconvened, Hager's attorney directed the court to several district court cases, but the court rejected them as factually dissimilar. The court then sua sponte

---

[3] 29 C.F.R. § 2590.606-4(d). Hager had cited this regulation in his pretrial memorandum, but it contained a typographical error.

[4] *See Geissal*, 524 U.S. at 79–80.

[5] *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1076 (9th Cir. 2005).

No. 17-11147

dismissed Hager's COBRA claims with prejudice. Hager elected not to pursue his fraudulent conversion claim, which the court dismissed without prejudice. Hager appeals only the dismissal of his COBRA claim.

## II. STANDARD OF REVIEW

"Our review of the district court's dismissal for failure to state a claim for relief is *de novo*."[6] A district court may consider the sufficiency of a complaint on its own initiative, "as long as the procedure employed is fair."[7] "[F]airness in this context requires both notice of the court's intention and an opportunity to respond."[8] Hager was aware of the court's concern about the viability of his claim and that the defendant had asked the court to dismiss the case with prejudice, albeit in a perfunctory filing. Moreover, Hager had the opportunity to make his case for a remedy to the district court. In any event, Hager has forfeited any challenge to the district court's sua sponte dismissal by failing to raise the issue on appeal.[9]

## III. ANALYSIS

We note that DBG has elected not to file a brief in this matter, but that does not preclude our consideration of the merits.[10] Hager contends that DBG violated COBRA's notice provision and that the district court erred in determining that he could not recover money damages for this violation.

Because COBRA is a part of ERISA, any remedy is limited to ERISA's "carefully crafted and detailed enforcement scheme."[11] That enforcement

---

[6] *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 135 (5th Cir. 1995).

[7] *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007)).

[8] *Id.* (quoting *Lozano*, 489 F.3d at 643).

[9] *See Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010).

[10] *Cf.* FED. R. APP. P. 31(c) (an appellee who does not file a brief forfeits the right to appear at oral argument).

[11] *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)).

scheme is embodied in 29 U.S.C. § 1132. So, we first examine whether Hager has standing to bring an action under that statute.[12] If we conclude that he does, we consider whether a COBRA notice violation can sustain a cause of action. If it can, we determine what remedy, if any, would be available for such a violation.

## A. ERISA Standing

To bring a suit under ERISA, Hager must be a plan "participant."[13] A participant may be a former employee who "is . . . eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer[.]"[14] At least one court has suggested that termination of COBRA coverage eliminates a former employee's status as a participant.[15] And, the Supreme Court has stated that an employee must have a "'colorable claim' to vested benefits" to be a participant.[16] As noted below, though, Hager has no claim for benefits under the plan, because the plan no longer exists.

More recently, however, the Supreme Court decided *Varity Corp. v. Howe*, in which employees were persuaded to transfer from an employer's old benefit plan to a new benefit plan, but later lost their benefits when the company under which the new plan was formed went into receivership.[17] The employees brought a suit for benefits they would have been owed under the old plan, and the Court noted that they were "participants or beneficiaries."[18]

---

[12] *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) (explaining that standing under ERISA is a jurisdictional matter); *see Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (when necessary, the court "must consider jurisdiction *sua sponte*").

[13] *See* 29 U.S.C. § 1132(a).

[14] *Id.* § 1002(7).

[15] *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005).

[16] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (citation omitted).

[17] 516 U.S. 489, 494 (1996).

[18] *Id.* at 494, 508 ("Varity concedes that the plaintiffs . . . are plan 'participants' or 'beneficiaries[.]'")); *see also Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 498–99, 504 (5th Cir. 1999), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) (former employee whose health benefits were terminated by

No. 17-11147

Similarly, the Eleventh Circuit has determined that an employee whose health plan was suspended without notice was a plan participant because, as an employee, he was nevertheless eligible for benefits.[19] Here, although DBG had discontinued the plan, Hager himself, though no longer an employee, remained eligible for benefits. The Sixth Circuit recently determined that two former employees were entitled to bring a class action as participants, even though they initiated the lawsuit after their employment had ended.[20] That court's analysis hinged on the fact that the plaintiffs had been employees at the time of the alleged ERISA violation.[21] Hager was a participant when DBG decided to discontinue its health plan, but allegedly failed to notify him.

Several courts have allowed ERISA civil actions when a defendant failed to give COBRA notice, and thus the plaintiff did not elect COBRA coverage. The courts in those cases did not examine ERISA standing, suggesting that there was no jurisdictional bar.[22] Finally, this circuit has suggested that a plaintiff has ERISA standing if he would be a plan participant "but for the employer's conduct alleged to be in violation of ERISA."[23]

---

former employer was a "participant" in plan). The plaintiffs in *Varity* still could not bring suit under § 1132(a)(1)(B) for the same reason Hager cannot here. *See Varity*, 516 U.S. at 515.

[19] *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1338, 1342 (11th Cir. 1992).

[20] *See Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 556, 561 (6th Cir. 2017).

[21] *Id.* at 561.

[22] *See Geissal*, 524 U.S. at 77–80 & n.3 (examining Article III standing, but not ERISA standing, for action seeking a civil penalty when plaintiff never obtained COBRA coverage); *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1296–300 (3d Cir. 1993) (concluding that plaintiff who did not obtain COBRA coverage because of employer's alleged misconduct could bring an action under § 1132(a)(3); *see also Peralta*, 419 F.3d at 1073 (implicitly characterizing plaintiff as a participant when evaluating availability of remedy, even though plaintiff was not covered at the time she brought suit).

[23] *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir. 1992); *see Adamson v. Armco, Inc.*, 44 F.3d 650, 654–55 (8th Cir. 1995) (listing circuits that have adopted this rule).

Taking all of this together, we conclude that Hager is a participant entitled to bring this action. Otherwise, employers would be able to avoid ERISA lawsuits simply by terminating their employees' health benefits.[24]

### B. COBRA Notice Violation

There was uncertainty in the district court whether DBG even had notice obligations under COBRA, so we begin there.

#### 1. Notice of Continuation Coverage

First, the parties do not dispute that DBG is the plan administrator.[25] 29 U.S.C. § 1166(a)(4) commands plan administrators to inform former employees of their COBRA rights.[26] Explaining this statute, 29 C.F.R. § 2590.606-4(b) details the content of the required notice to a former employee of his right to continuation health coverage under COBRA.[27]

Hager complains that he had no notice of his right to coverage, but as noted above, he acknowledged in the district court that DBG had given this notice. Because no copy of the notice itself is in the record, we cannot tell whether it complies with the requirements of 29 C.F.R. § 2590.606-4(b). But, because Hager acknowledged in the district court that he received some notice and fails to explain on appeal why that notice was inadequate, we consider this issue forfeited.

---

[24] *Cf. Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir. 1992) (noting the "broad view of participant standing under ERISA").

[25] An administrator is either the plan sponsor (in this case DBG) or a person designated in the terms of the plan. 29 U.S.C. § 1002(16)(A). Because the terms of the plan are not in the record, we rely on Hager's statement that DBG was the plan administrator.

[26] 29 U.S.C. § 1166(a)(4).

[27] 29 C.F.R. § 2590.606-4(b); *see* 29 U.S.C. § 1168. These notice requirements apply to "qualified beneficiaries," which includes an employee who is terminated, so the notice requirements of 29 C.F.R. § 2590.606-4 also apply to terminated employees. *See* 29 U.S.C.§§ 1167(3)(B), 1163(2).

No. 17-11147

### 2. Notice of Continuation Coverage Termination

Another subsection of that regulation requires a plan administrator to inform qualified beneficiaries "of any termination of continuation coverage that takes effect earlier than the end of the maximum period of continuation coverage applicable to [the] qualifying event."[28] On its face, this commanded DBG to notify Hager that the coverage was being terminated. The district court suggested this was not the case because DBG's termination of the plan established "the end of the maximum period of continuation coverage." According to the district court, "the maximum period of continuation coverage" cannot be longer than the plan's existence.

We disagree. Section 2590.606-4(d) requires notice if the termination occurs earlier than "the end of the maximum period of continuation coverage *applicable to [the] qualifying event*."[29] The "maximum period of continuation coverage" is defined by the qualifying event at issue. Different qualifying events—those that allow a plan participant to obtain coverage under COBRA—have different maximum periods of coverage. A terminated employee is eligible for coverage for a period of 18 months after the termination, but other qualifying events allow coverage for 36 months.[30] In fact, the subsection of COBRA describing the allowable period of coverage for different qualifying events is titled "*maximum* required period."[31]

Moreover, if the "maximum period of continuation coverage" were defined by the lifespan of the plan, termination of coverage would *never* be earlier than the "maximum" period of coverage. Under the district court's

---

[28] 29 C.F.R. § 2590.606-4(d).
[29] *Id.* (emphasis added).
[30] 29 U.S.C. §§ 1162(2)(A), 1163(2).
[31] *Id.* § 1162(2)(A) (emphasis added).

No. 17-11147

interpretation, an administrator would never have to give notice of coverage termination. We are disinclined to find § 2590.606-4(d) superfluous.[32]

DBG discontinued its health plan earlier than 18 months after Hager was fired. It therefore had an obligation to notify Hager "as soon as practicable" that it was discontinuing coverage.[33] Hager adequately alleged that DBG did not fulfill its notice obligations under COBRA.

### C. Disputes of Fact Concerning Notice

In the district court, DBG contended that it *did* provide such notice. It allegedly produced an unsigned letter, addressed to Hager's former address, informing him that DBG was terminating its Blue Cross health plan. DBG contended in the district court that this showed that it fulfilled its notice obligations. DBG has forfeited such a contention before this court by failing to file a brief, but even if it had not, this contention would not merit dismissal of Hager's case.

In *Degruise v. Sprint Corp.*, we noted that the Secretary of Labor had not promulgated regulations describing the notice requirements for COBRA and concluded that employers were "'required to operate in good faith compliance with a reasonable interpretation' of what adequate notice entails."[34] Two years later, the Secretary of Labor did promulgate such regulations, *viz.*, § 2590.606-

---

[32] *Cf. Howard Hughes Co., L.L.C. v. C.I.R.*, 805 F.3d 175, 183 (5th Cir. 2015) ("[I]n statutory interpretation we generally follow 'the rule against superfluities, [which] instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous.'" (citation omitted) (second alteration in original)).

[33] 29 C.F.R. § 2590.606-4(d)(3).

[34] 279 F.3d 333, 336 (5th Cir. 2002) (quoting *Kidder v. H & B Marine, Inc.*, 734 F. Supp. 724, 730 n. 6 (E.D. La. 1990)).

9

4(d), discussed above.[35] It is unclear whether *Degruise*'s statement that a good faith attempt to satisfy the notice requirement is sufficient[36] is still good law.

Even if DBG only needed to show good faith compliance, whether it did so here is a question of fact more appropriate for summary judgment or trial and does not implicate a failure to state a claim. In fact, we are skeptical that DBG's evidence would even be sufficient to obtain summary judgment. This court has typically required evidence that a letter was actually mailed to meet the good faith standard.[37] But DBG has produced no such evidence; it produced only the letter itself. Hager also points to evidence suggesting that DBG did not act in good faith: (1) DBG sent Hager's employment termination notice, which was hand-delivered earlier than the health plan termination notice, to the correct address; (2) Hager exchanged text messages with Rowan about health insurance, during which Rowan failed to mention the plan's discontinuation; and (3) DBG deposited Hager's premiums when it received them, and refused to refund them for almost two years. We conclude that, alone, DBG's letter is insufficient to support dismissal of Hager's claim.

## D. Availability of a Remedy

Hager has stated a claim that DBG violated its COBRA notice obligations, so the question becomes whether he is entitled to the compensatory damages—his medical costs—that he has requested. The availability of a

---

[35] *See* 29 C.F.R. § 2590.606-4(h); Health Care Continuation Coverage, 69 Fed. Reg. 30097, 30104 (May 26, 2004).

[36] *See Degruise*, 279 F.3d at 337 ("[T]he law requires only that the employer make a good faith attempt to comply with [COBRA's] notification provision." (quoting *DeGruise v. Sprint Corp.*, No. Civ.A 99-0383, 1999 WL 486887, at *2 (E.D. La. July 8, 1999)) (second alteration in original)).

[37] *See id.* at 337 (finding good faith when the defendant mailed a COBRA notice via certified mail, "a special type of first class mail whose primary purpose is to provide evidence of an individual's receipt of delivery"); *cf. Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 421 (5th Cir. 2007) (genuine dispute of material fact remained on issue of mailing, despite testimony that the defendant business typically used first-class mailing procedures).

remedy for a COBRA notice violation is an issue of first impression for this court. Hager cites numerous district court cases that have noted that "compensatory damages in an amount equal to medical expenses minus deductibles and premiums that the beneficiary would have had to pay for COBRA coverage" are available for COBRA notice violations.[38] Each of these cases involved a defendant's failure to provide notice of a former employee's eligibility for COBRA benefits, not notice of the termination of a plan. The district court, in contrast, relied heavily on *Peralta v. Hispanic Business, Inc.*, in which the Ninth Circuit held that money damages were not available for a claim based on allegations that the defendant breached its fiduciary duty to a plaintiff by failing to inform her that its disability insurance policy was discontinued.[39] We examine Hager's potential avenues for enforcement under 29 U.S.C. § 1132(a), the ERISA civil enforcement statute.

*1. Section 1132(a)(1)(B)*

Section 1132(a)(1)(B) allows a plaintiff to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[40] "When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [§ 1132](a)(1)(B)."[41] The *Peralta* court determined that this remedy was unavailable to a plaintiff whose employer's plan had been discontinued, reasoning that if the plan is defunct, a

---

[38] *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 882 (S.D. Tex. 2008); *see Fisher v. Trutech, Inc.*, No. 5:04-CV-109(CAR), 2006 WL 3791977, at *3 (M.D. Ga. Nov. 17, 2006); *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1554 (S.D. Ga. 1996).

[39] 419 F.3d at 1068, 1076.

[40] 29 U.S.C. § 1132(a)(1)(B).

[41] *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir. 1992), *abrogated on other grounds by Mertens*, 508 U.S. 248.

plaintiff cannot recover benefits due under the plan's terms.[42] Other courts have reached the same conclusion.[43] We agree that this remedy is foreclosed.

  *2. Section 1132(a)(3)*

We next examine whether § 1132(a)(3) allows monetary damages.[44] Section 1132(a)(3) allows a civil action

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.[45]

The Supreme Court has made clear that this section allows only "those categories of relief that were *typically* available in equity."[46] Consequently, money damages are not available under § 1132(a)(3)(A).[47]

As for § 1132(a)(3)(B), which allows for "other appropriate equitable relief," Hager's claim could arguably be characterized as seeking restitution,[48] although he has not characterized it as such. Even if it were, restitution in the form of money is not equitable relief unless it was traditionally available in equity, such as a via constructive trust or equitable lien.[49] These examples do

---

[42] *Peralta*, 419 F.3d at 1073.

[43] *See McCormack v. Comput. Scis. Corp.*, 99 F. App'x 458, 463 (4th Cir. 2004) (holding that a plaintiff had no remedy under § 1132(a)(1)(B) when "the plan no longer existed and could no longer function"); *Hawk v. Consol. Rest. Operations, Inc.*, No. 3:03-CV-0399-B, 2007 WL 9711656, at *11 (N.D. Tex. Feb. 22, 2007) (noting that because an employer offered no benefit plans, "a claim to recover those benefits under § 1132(a)(1)(B) is foreclosed"); *cf. Varity*, 516 U.S. at 515 ("The plaintiffs in this case could not proceed under [§ 1132(a)(1)] because they were no longer members of the Massey-Ferguson plan[.]").

[44] We note that § 1132(a)(2) provides no remedy because Hager does not bring this action on behalf of the plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44 (1985); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007).

[45] 29 U.S.C. § 1132(a)(3).

[46] *Knudson*, 534 U.S. at 210 (quoting *Mertens*, 508 U.S. at 256).

[47] *Id.* at 210–12.

[48] *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (AM. LAW INST. 2011) (defining restitution).

[49] *Knudson*, 534 U.S. at 213.

not "exhaust[] the universe" of equitable relief,[50] but a remedy that only seeks to impose liability and require the defendant to pay the plaintiff a sum of money is a legal remedy, not an equitable one.[51]

The remedy Hager seeks is not equitable. Aside from the fact that he does not explicitly ask for restitution, Hager seeks money damages for all medical expenses, which is a claim for money that is in "the general assets of [DBG], which were not received from, and have not been promised to, [Hager]."[52] He effectively acknowledges that his medical expenses would be compensatory damages. Section 1132(a)(3) does not allow such a recovery.

*3. Section 1132(a)(1)(A) and 1132(c)(1)*

Section 1132(a)(1)(A) allows a participant or beneficiary to bring an action for the civil penalty described in § 1132(c).[53] That section, in turn, allows the court to award a discretionary penalty against an administrator that does not comply with the COBRA notice requirements of 29 U.S.C. § 1166(a)(4),[54] on which 29 C.F.R. § 2950.606-4 elaborates.[55] Consequently, § 1132(c)'s civil penalty is available for failure to provide notice of the termination of the relevant health plan to a COBRA-covered former employee.[56] *Peralta*, on which the district court relied, also noted that this civil penalty was available.[57]

---

[50] *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 526 (5th Cir. 2013).

[51] *Knudson*, 534 U.S. at 213–15; *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 362, 366 (5th Cir. 2014).

[52] *Bunte*, 756 F.3d at 366.

[53] 29 U.S.C. § 1132(a)(1)(A).

[54] *Id.* § 1132(c)(1); *see Burton v. Banta Glob. Turnkey Ltd.*, 170 F. App'x 918, 922 (5th Cir. 2006).

[55] 29 C.F.R. § 2590.606-4(a); *see* Health Care Continuation Coverage, 69 Fed. Reg. 30097 (May 26, 2004).

[56] *See Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 509 (5th Cir. 2004).

[57] *Peralta*, 419 F.3d at 1073 n.13.

Such a penalty can be "up to $100 a day from the date of such failure," and "such other relief as [the court] deems proper."[58] Hager maintained in the district court that he was entitled to such a penalty. Ordinarily we would review the district court's refusal to award a penalty under § 1132(c)(1) for abuse of discretion.[59] But here, the court did not merely decline to award a penalty; it held that Hager was *ineligible* for *any* remedy, although it never specifically addressed whether a penalty was available. "[T]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."[60] The district court abused its discretion when it ruled that Hager was legally barred from obtaining a penalty award.

Whether to award a civil penalty and the amount of any such award remain discretionary. We have suggested that prejudice is one factor to consider,[61] and it likely weighs in Hager's favor.[62] But other than that, we have offered district courts limited guidance on this issue. Arguably, the availability of other remedies could also be a factor in deciding whether to award a penalty.[63] Other courts have considered "bad faith or intentional conduct on the part of the administrator," and "the length of the delay."[64] Courts have also explained that the penalty "is meant to be in the nature of punitive damages,

---

[58] 29 U.S.C. § 1132(c)(1).

[59] *See Godwin v. Sun Life Assurance Co. of Can.*, 980 F.2d 323, 327 (5th Cir. 1992); 29 U.S.C. § 1132(c)(1).

[60] *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).

[61] *See Godwin*, 980 F.2d at 327; *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir. 1981).

[62] Hager allegedly incurred $36,000 for his cancer treatment before he learned the plan was canceled.

[63] *Cf. Knudson*, 534 U.S. at 220 (noting that petitioner may have other remedies available, despite having none under § 1132(a)(3)).

[64] *Fama v. Design Assistance Corp.*, 520 F. App'x 119, 123 (3d Cir. 2013) (quoting *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002)).

designed more for the purpose of punishing the violator than compensating the participant or beneficiary."[65] When an administrator fails to provide notice of COBRA eligibility, courts have stated that "the aim is to place the plaintiff 'in the same position [he] would have been in had full continuation coverage been provided,'" and to "induce compliance by plan administrators."[66]

In this vein, some district courts have "deemed [it] proper" to award medical expenses as a penalty under § 1132(c).[67] We can discern no barrier to the court awarding the amount of Hager's medical expenses as a penalty. But the appropriateness of a penalty, and the amount of such penalty, if appropriate, will require factual findings concerning DBG's good faith,[68] which, as noted above, is disputed. And there is limited evidence in the record on that subject. We therefore remand the case to the district court to determine whether, in light of the foregoing analysis, to award a penalty, and if it does, the amount of such penalty.

*E. Attorneys Fees*

Hager also renews his request for attorneys fees. A court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."[69] This inquiry is case-specific and involves consideration of a number

---

[65] *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002).

[66] *Phillips v. Riverside, Inc.*, 796 F. Supp. 403, 411 (E.D. Ark. 1992) (quoting *Gaskell v. Harvard Co-op Society*, 762 F. Supp. 1539, 1543 (D. Mass. 1991)).

[67] *See Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1042 (S.D. Ohio 2001); *cf. Sonnichsen v. Aries Marine Corp.*, 673 F. Supp. 2d 466, 473–74 & n.5 (W.D. La. 2009) (finding that the plaintiff was not entitled to the daily statutory penalty, but that medical expenses were proper as "other relief" under § 1132(c)); *see also Jones v. Officemax, Inc.*, 38 F. Supp. 2d 957, 961 (D. Utah 1999) ("[A]ctual damages suffered from the loss of insurance coverage . . . . could be considered by a court in determining whether to assess a penalty against an employer under § 1132.").

[68] 60A AM. JUR. 2D *Pensions* § 757 (listing factors).

[69] 29 U.S.C. § 1132(g).

No. 17-11147

of factors.[70] We leave this issue for the district court to consider on remand, if applicable.

## IV. CONCLUSION

We REVERSE the dismissal of Hager's COBRA claim and REMAND this case to the district court for further proceedings consistent with this opinion.

---

[70] *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997).