# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 30, 2021

Lyle W. Cayce
Clerk

No. 21-30022

KATHRAN RANDOLPH,

*Plaintiff—Appellant*,

*versus*

EAST BATON ROUGE PARISH SCHOOL SYSTEM,

*Defendant—Appellee*.

Appeal from the United States District Court for the
Middle District of Louisiana
3:15-CV-654

Before HIGGINBOTHAM, SMITH, and HO, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

This case concerns whether an employer violated the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA")[1] when it failed to provide a retired employee notice of her right to continue her insurance coverage. This issue returns to this Court following a prior remand to the district court for further consideration of Kathran Randolph's COBRA claims against the

---

[1] 29 U.S.C. § 1161 *et seq.*

No. 21-30022

East Baton Rouge Parish School System ("EBRPSS").[2] We reverse the district court's holding that no COBRA violation occurred; we affirm the district court's denial of Randolph's request for payment of her medical expenses; we remand the district court's decision not to award statutory penalties or attorneys' fees to Randolph; and we vacate the district court's denial of Randolph's motion to alter or amend judgment or for a new trial.

## I.

Randolph was employed as a teacher and later as a principal by EBRPSS. During her employment, Randolph was enrolled in EBPRSS's self-funded health insurance plan, which was administered by Blue Cross and Blue Shield of Louisiana.

On September 4, 2014, Randolph was placed on paid administrative leave pending an investigation into a complaint against her. Randolph was taken off administrative leave on October 22, 2014, but Randolph used her sick leave to remain on paid leave. On August 13, 2015, Randolph was placed on unpaid leave after she exhausted her sick leave and other forms of leave. EBPRSS paid Randolph's portion of her insurance premiums while she was on unpaid leave until her retirement.

Randolph retired on February 15, 2016. A Blue Cross and Blue Shield of Louisiana report noted that her insurance coverage ended on February 29, 2016. On August 23, 2016, Randolph's insurer paid its final claim. On September 13, 2016, Randolph went to a doctor's office and her coverage was denied. Shortly after this denial, Randolph spoke to Anita Williams, an EBRPSS Payroll and Benefits employee. Williams told Randolph that she owed $2,900 for back payments on missed insurance premiums and $480 per

---

[2] See *Randolph v. E. Baton Rouge Par. Sch. Sys.*, 774 F. App'x 861 (5th Cir. 2019) (per curiam).

No. 21-30022

month going forward.[3] Randolph received her first COBRA notice in a letter dated October 3, 2016.

## II.

On October 5, 2015, Randolph filed suit under 42 U.S.C. § 1983, naming EBRPSS and EBRPSS officials as defendants. After she retired, Randolph also alleged a COBRA violation in an amended complaint filed on November 14, 2016.

The district court granted summary judgment to EBRPSS and the other defendants on Randolph's § 1983 claims. The district court did not substantially discuss the COBRA claim. Randolph appealed to this Court. We affirmed the district court's grant of summary judgment with respect to the § 1983 claims and reversed and remanded for reconsideration of the COBRA claim.[4]

On remand, the district court ruled from the bench that neither Randolph's placement on unpaid leave nor her retirement constituted a qualifying event triggering COBRA because neither change was accompanied by a loss of coverage. The district court ruled that Randolph was not entitled to statutory penalties, attorneys' fees, or payment of medical bills. Randolph filed a Rule 59 motion for the district court to alter or amend the judgment or grant a new trial.[5] The district court denied that motion. Randolph timely appealed.

---

[3] This number was either $480 or $490; it was not clearly established in the record below.

[4] *Randolph*, 774 F. App'x 861 (5th Cir. 2019).

[5] FED. R. CIV. P. 59.

No. 21-30022

## III.

Following a bench trial, we review a district court's findings of fact for clear error and its conclusions of law *de novo*.[6] Factual findings are clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.[7] The district court's denial of Randolph's requests for statutory penalties, attorneys' fees, and payment of her medical bills are each reviewed for abuse of discretion.[8] The denial of Randolph's Rule 59 motion is also reviewed for abuse of discretion.[9]

## IV.

Congress amended the Employment Retirement Income Security Act of 1974 ("ERISA")[10] with COBRA to create additional statutory rights, including the right to continue health insurance coverage after certain employment status changes. "The intent of Congress in enacting the COBRA amendments was to preserve employees' medical insurance as they move from job to job and prevent the loss of insurance coverage that could accompany any changes in employment."[11]

---

[6] *Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014).

[7] *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018).

[8] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 820–21 (5th Cir. 1997); *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992); *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 470 (5th Cir. 2018).

[9] *Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021).

[10] 29 U.S.C. § 1001 *et seq.*

[11] *Lifecare Hosps., Inc. v. Health Plus of Louisiana, Inc.*, 418 F.3d 436, 441 (5th Cir. 2005).

No. 21-30022

Under COBRA, qualified beneficiaries, including employees, are entitled to continue coverage following a qualifying event.[12] A COBRA violation occurs when there is a qualifying event and no notice to the qualified beneficiary of their COBRA rights. 29 U.S.C. § 1163 provides a list of events, including a termination or reduction of hours, that constitute a qualifying event when they cause a loss of coverage.[13] There must be a "but for" causal link between the qualifying event and the loss of coverage.[14]

A reduction of hours "occurs whenever there is a decrease in the hours that a covered employee is required to work or actually works, but only if the decrease is not accompanied by an immediate termination of employment."[15] A termination occurs when the employee actually stops working for the employer.[16] The circumstances surrounding an employee's termination or reduction of hours are irrelevant unless gross misconduct was involved, "it does not matter whether the employee voluntarily terminated or was discharged."[17]

A loss of coverage occurs when an employee ceases "to be covered under the same terms and conditions as in effect immediately before the qualifying event."[18] However, "a loss of coverage need not occur immediately after the event, so long as the loss of coverage occurs before the

---

[12] 29 U.S.C. §§ 1161, 1167(3)(B); *Blue Cross & Blue Shield of Texas, Inc. v. Shalala*, 995 F.2d 70, 71 (5th Cir. 1993).

[13] 29 U.S.C. § 1163.

[14] *Id.*

[15] 26 C.F.R. § 54.4980B-4, A-1(e).

[16] *Mlsna v. Unitel Communications, Inc.*, 41 F.3d 1124, 1128 (7th Cir. 1994).

[17] 26 C.F.R. § 54.4980B-4, A-2; 29 U.S.C. § 1163(2).

[18] 26 C.F.R. § 54.4980B-4, A-1(c).

No. 21-30022

end of the maximum coverage period."[19] The maximum coverage period is generally the 18 or 36 months following a qualifying event.[20]

Employers must notify plan administrators that a qualifying event occurred within 30 days of the qualifying event.[21] Plan administrators are in turn required to notify covered employees of their COBRA rights within 14 days of receiving notice from employers.[22] Thus, employees should receive notice of their COBRA rights within 44 days of a qualifying event. Failure to provide notice constitutes a violation.

Following a COBRA violation, qualified beneficiaries may bring civil actions to recover benefits under the health insurance plan and to seek relief including a civil penalty of $110 per day.[23] Qualified beneficiaries bringing a civil action can also recover attorneys' fees at the discretion of the court.[24]

## V.

Randolph argues that both her placement on unpaid leave and her retirement were qualifying events under § 1163. We affirm the district court's holding that the placement on unpaid leave was not a qualifying event; we reverse the district court's holding regarding Randolph's retirement and find that her retirement was a qualifying event and insufficient notice was given following her retirement.

---

[19] *Id.* (internal citations omitted).

[20] 29 U.S.C. § 1162(a)(2); *Shalala*, 995 F.2d at 71.

[21] 29 U.S.C. § 1166(a)(2).

[22] 29 U.S.C. § 1166(a)(4); 29 C.F.R. § 2590.606-4; *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002).

[23] 29 U.S.C. § 1132; 29 C.F.R. § 2575.502c–3.

[24] 29 U.S.C. § 1132(g).

No. 21-30022

## A.

Randolph first argues that a qualifying event occurred when she was placed on unpaid leave on August 13, 2015. The district court correctly held that Randolph's placement on unpaid leave was not a termination, but the district court failed to consider whether the placement on unpaid leave was a reduction of hours. Randolph's placement on unpaid leave at the exhaustion of her sick leave was a reduction of hours, a potential § 1163 qualifying event, as her hours were effectively reduced to zero and her pay was terminated.[25]

However, no loss of coverage was caused by this reduction of hours, so the placement on unpaid leave was not a qualifying event under COBRA.[26] A loss of coverage occurs when the employee ceases "to be covered under the same terms and conditions as in effect immediately before the qualifying event."[27] Randolph's placement on unpaid leave only affected her hours and pay. It did not alter the terms of her coverage; she was allowed to continue her health insurance at the same rate. While the placement on unpaid leave was a reduction of hours, it was not a qualifying event because it did not cause a loss of coverage.

## B.

Randolph also argues that her retirement was a qualifying event. Randolph's retirement was classified by EBRPSS as a separation of service and was a termination under § 1163. Retirements, as terminations, are among the changes in employment status that COBRA was intended to cover when the retirement causes a change in insurance coverage. When an employee

---

[25] *See Gaskell v. Harvard Co-op Society*, 3 F.3d 495, 498–501 (1st Cir. 1993) *and Morehouse v. Steak N Shake*, 938 F.3d 814 (6th Cir. 2019).

[26] *Morehouse*, 938 F.3d at 819–21.

[27] 26 C.F.R. § 54.4980B-4, A-1(c).

retires and, upon retirement, is required to pay an increased amount for the same health coverage that the employee had before retirement, the increase in the premium or contribution required for coverage is a loss of coverage and the retirement is a qualifying event.[28] A loss of coverage is not necessarily when coverage ends; a loss of coverage occurs when the terms and conditions of coverage change.

Randolph experienced a loss of coverage when she retired as she was no longer eligible to continue her health insurance at the same contribution level. Rather than paying approximately $200 per month as an employee, Randolph was required to pay $480 per month to continue coverage as a retiree. The district court correctly concluded that COBRA does not require that an employee be allowed to pay the same contribution rate.[29] However, a change in the contribution level triggers the notice requirement.[30] Employers may change an employee's contribution rates for health insurance upon retirement, but the employer must provide a COBRA notice following such a change.

The loss of coverage must be connected to the qualifying event by a "but for" causal link.[31] But for her retirement, Randolph would have continued to be an employee and would have had been allowed to pay $200 per month for health insurance. Once she retired, Randolph was no longer eligible to remain on the same plan at the same contribution rate. Because the retirement caused a loss of coverage, a qualifying event occurred.

---

[28] 26 C.F.R. § 54.4980B-4, A-1(g), Example 2.

[29] 29 U.S.C. § 1162(3) (permitting the new COBRA rate to be up to 102% of the applicable premium).

[30] 26 C.F.R. § 54.4980B-4, A-1(c).

[31] 29 U.S.C. § 1163.

No. 21-30022

## C.

The district court erred when it found that no qualifying event occurred because the § 1163 events were not contemporaneous with the loss of coverage. The district court held that "[t]here was no loss of coverage that occurred at the time that Ms. Randolph's status became leave without pay or pending status in August of 2015" and "the retirement was likewise not a qualifying event because, again, there was no loss of coverage."

A loss of coverage does not need to be contemporaneous to the qualifying event. Regulations interpreting COBRA specifically state that "a loss of coverage need not occur immediately after the event, so long as the loss of coverage occurs before the end of the maximum coverage period."[32] 29 C.F.R. § 2590.606-4(b) "requires notice if the termination occurs earlier than 'the end of the maximum period of continuation coverage applicable to [the] qualifying event.'"[33] Thus, the relevant question is whether a loss of coverage occurred within 18 months of a qualifying event.[34] Here, the changes in the terms and conditions of Randolph's coverage occurred within 18 months of her retirement.

## D.

Since a qualifying event occurred, the final question is whether proper notice was given. Randolph should have received notice within 44 days of the

---

[32] 26 C.F.R. § 54.4980B-4, A-1(c).

[33] *Hager*, 903 F.3d at 467 (quoting 29 C.F.R. § 2590.606-4(b)).

[34] 29 U.S.C. § 1162(2)(a). *See also Gaskell*, 3 F.3d at 499–501 (holding that the qualifying event need not be contemporaneous to the loss of coverage and that the 18 month continuation coverage period runs from the date of the qualifying event which triggers the loss of benefits).

No. 21-30022

qualifying event.[35] The 44 days are measured from the qualifying event that eventually leads to coverage loss.[36] Applied here, Randolph should have been given notice by the end of March 2016. Randolph did not receive a COBRA notice until October 3, 2016. A qualifying event occurred and caused a loss of coverage, and Randolph did not receive timely notice of her COBRA rights. Thus, there was a COBRA violation.

## VI.

Randolph sought three forms of relief: statutory penalties for delinquent notice, payment of her unpaid medical expenses, and attorneys' fees. The district court did not grant any form of relief. We remand only to the extent that some of the relevant factors for deciding whether to grant relief have changed in light of this opinion.

## A.

Courts have discretion to impose a penalty of $110 per day for a failure to meet COBRA notice requirement.[37] We have offered district courts "limited guidance" as to what factors should be considered when deciding whether to impose sanctions.[38] The purpose of penalty is to ensure that plan participants know where they stand with respect to their health insurance plan.[39] Courts have found that the penalty is designed to be more punitive in nature rather than compensatory with the aim of inducing compliance by plan

---

[35] 29 U.S.C. § 1166(a)(2); 29 U.S.C. § 1166(a)(4); 29 CFR § 2590.606-4(b)(1).

[36] 29 U.S.C. § 1163; *Gaskell*, 3 F.3d at 499.

[37] 29 U.S.C. § 1132(c)(1).

[38] *Hager*, 903 F.3d at 470.

[39] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989).

No. 21-30022

administrators.[40] District courts have considered a number of factors in the decision to award or withhold statutory penalties, including: prejudice to the plaintiff, the availability of other remedies, bad faith or intentional conduct by the administrator, and the length of the delay.[41]

The district court found "no evidence of any aggravating factors or bad faith that would warrant a discretionary or fact-specific finding of the statutory penalties." Although the district court did not specify what "aggravating factors" it considered, the length of delay may have been one of them.[42] Because we held that Randolph's retirement in February 2016 was a qualifying event, the length of the delay has changed from what was considered by the district court. We remand the decision regarding statutory penalties to the district court for further consideration.

## B.

Section 1132 also permits courts to "order such other relief as it deems proper."[43] District courts have interpreted this provision to enable plaintiffs to recover the cost of medical bills that the plaintiff paid in the absence of owed continuation coverage.[44] This Court has recognized that district courts

---

[40] *Hager*, 903 F.3d at 471 (*citing Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002) *and Phillips v. Riverside, Inc.*, 796 F. Supp. 403, 411 (E.D. Ark. 1992)).

[41] *See id*. at 470–71.

[42] *Id.* at 470–71.

[43] 29 U.S.C. § 1132(c)(1).

[44] *See Sonnichsen v. Aries Marine Corp.*, 673 F. Supp. 2d 466, 474 (W.D. La. 2009) *and Miles–Hickman*, 589 F. Supp. 2d 849, 882 (S.D. Tex. 2008). *See also Fisher v. Trutech, Inc.*, No. 5:04-CV-109, 2006 WL 3791977, at *3 (M.D. Ga. Nov. 17, 2006); *Chenoweth v. Wal–Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1042 (S.D. Ohio 2001); *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1555 n.24 (S.D. Ga. 1996).

No. 21-30022

grant this form of relief and has not found it untoward.[45] Plaintiffs' recovery has been limited to "an amount equal to medical expenses minus deductibles and premiums that the beneficiary would have had to pay for COBRA coverage."[46] Where the total of monthly premiums a plaintiff would have owed under COBRA exceeds the medical costs incurred, district courts have found no damages are owed.[47]

The district court determined EBRPSS continued to pay Randolph's medical bills, making the total amount of unpaid medical bills less than the unpaid premiums. This factual finding presents no clear error. The district court did not abuse its discretion in denying Randolph's request for unpaid medical expenses. We affirm the district court's denial of Randolph's request for payment of her medical expenses.

## C.

In an ERISA proceeding, a court "in its discretion may allow a reasonable attorneys' fee and costs of action to either party."[48] *Wegner v. Standard Ins. Co.* provides five factors to determine whether a court should grant attorneys' fees.[49] As a result of our decision, some of the *Wegner* factors likely shifted. Specifically, the fourth factors asks, "whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself."[50] Randolph presented a significant legal question regarding the

---

[45] *Hager*, 903 F.3d at 471.

[46] *Sonnichsen*, 673 F. Supp. 2d at 474.

[47] *Miles-Hickman*, 589 F. Supp. 2d at 881–82.

[48] 29 U.S.C. § 1132(g).

[49] 129 F.3d at 821.

[50] *Id.*

interpretation of the COBRA amendment to ERISA. The fifth *Wegner* factor asks a court to weigh the relative merits of the parties' positions, which favor Randolph following a reversal. We therefore remand the district court's denial of attorneys' fees for further consideration.

## VII.

We REVERSE the district court's ruling that no COBRA violation occurred. We AFFIRM the district court's denial of Randolph's request for payment of her medical expenses. We REMAND the issue of whether Randolph should be awarded the statutory penalty or attorneys' fees for further consideration. We VACATE as moot the district court's denial of Randolph's Rule 59 motion.